Putnam J.
delivered the opinion of the Court. This is a valued policy upon the brig Henry and cargo or freight, and a total loss has happened within the year for which the insurance was effected. No question is made respecting the vessel; but it is objected, that there was no cargo nor freight at the risk of the underwriters ; and further, that if there was any thing on board which might be considered as cargo, and if there was any freight at risk, the policy must be opened to ascertain the extent of the interest of the assured in those subjects respectively.
*449 In respect to the cargo, it appears that the property on board the Henry consisted partly of mules, and of hay, corn, &c., which were put on hoard for their subsistence on the voyage from St. Jago to Charleston. And it is contended that the hay, corn, &c., were protected by this policy under the name of cargo. We think, however, that they are more analogous to outfits, than to cargo. The value of this provender was to be compensated for in the price of the mules in the market; as in the whale fishery, the value of the outfits is to be made up by the proceeds of the oil. It has been argued, that there was an expectation that a considerable quantity of the hay and other provender would remain unconsumed, if the vessel should have an ordinarily good passage, and would be sold as cargo at the port of discharge. But this food for the cattle was not laden on board as merchandise ; and the circumstance that some of it might remain to be sold at the end of the voyage, does not make it cargo, any more than the remnants of fishing lines, harpoons, &c., in the whale fishery, would make the outfits to become cargo, within the common meaning and understanding of merchants and underwriters.[1]
Then it is io be considered, whether mules can be viewed as cargo. According to Postlethwaite, cargo signifies “ all the merchandises and effects which are laden on board a ship, exclusive of the soldiers, crew, rigging, ammunition, provisions, guns, &c., though , all these things load it sometimes more than the merchandises.” In that enlarged sense the mules might be considered as cargo, and there should seem to be no distinction whether they were on or under deck. But the word has a much more limited meaning in this contract. The mules on deck would not be protected as cargo, because they would be exposed to greater risk, if there were no other objection. Lenox v. United Ins. Co., 3 Johns. Cas. 178. Thus in Ross v. Thwaite, cited in Park (7th ed.), 26, a policy on goods was held not to include goods lashed on deck. So in Smith et al. v. Wright, 1 Caines’s R. 44, it was held that the owners of cotton in bales laden on deck, *450 and thrown overboard for the preservation of ship and cargo, could not recover for the jettison against the owner of the ship ; and it seemed to be conceded, that shippers of goods under hatches were not liable to a contribution in such cases. So if mules were to be considered as merchandise, they would not be within the policy if carried on deck.
But there is another objection, applicable both to the mules on deck and to those under deck ; which is, that they are the subjects of particular insurance, and are not included under the general word cargo or goods. The Spanish West Indian laws declare, that under the general expression of goods, are not to be understood, cattle, slaves, ships’ stores and freights; and the ordinance published at Florence in 1526, declares, that slaves, fruits, horses, and several other kinds of property enumerated, must be expressed in the policy, and are not considered to be included under the general name of merchandise. Wesket, 261, tit. Goods. And although it is said in Marshall, bk. 1, c. 3, § 7, and in other books, that slaves are considered as merchandise, and insurable as such, yet we think it must have been in such cases only where the parties, by some memorandum at the foot of the policy, or by the representation of the assured, or otherwise, knew that the goods or the merchandise consisted of slaves. It should seem reasonable, that the parties, in insurance upon living animals, should make a particular agreement as to the extent of the risk to be borne. For it is not to be supposed, that the premium for insuring a cargo of racehorses, elephants, or other valuable animals, would not be greater than for insuring bales of goods. In the former case, the animals would be exposed not only to natural death, but to destruction by the breaking of their limbs from the rolling of the ship ; which would not occasion the least injury to the bales of merchandise.
And the freight upon animals is estimated, sometimes upon the number laden on board, and sometimes upon the number delivered alive, but not upon such as die on the passage ; unless there should be a particular agreement. Abbott, pt. 3, c. 7, § 1 ; B-occus, note 77.
Such property, therefore, should be particularly repre *451 seated to the underwriters and described in the policy. Sc was it done 'in Lawrence v. Aberdein, 5 Barn. St Aid. 107. So in Coit v. Smith, 3 Johns. Cas. 16, the policy was on horses, eo nomine.[1]
There were, however, ten doubloons on board, which we think may be considered as within the word cargo. So rays Roccus, note 17 ; and although some other jurists entertain a different opinion, we think the general understanding in the United States is conformable to his opinion. Phillips on Ins. 66 ; Marsh, bk. 1, c. 7, § 3 ; and the cases there cited. There is no evidence that this money was intended particularly for expenses of the captain, and not as cargo to be laid out at the port of discharge : as dollars carried to India are to be invested for the use of the owners.
We are now to consider what insurable interest the plaintiffs had in the freight. And it is not a sound objection, that the insured were the owners of the ship, as well as of the property laden on board.[2] They may insure the safe transportation of their own property in their own ship under the name of freight, just as well as if their ship were employed by them to carry the goods or property of others. In the latter case they are to receive a reward for the transportation ; in the former, their compensation arises from the increased value of their property carried in their ship to the destined port of discharge. And any one who has an interest in the safe transportation, may insure it in the name of freight. The word, in an enlarged sense, may mean the sum to be paid for carrying any property, animate or inanimate, on ship board, from one port or place to another. It may be paid by a sum in gross, founded upon the whole ship, or the tonnage of part of the ship, or upon the merchandise by measure or by weight, to be calculated or valued, as the parties to a contract relating to it may agree. In the enlarged sense, it would apply to live stock, as well as to merchandise, on deck as well as under deck, and is co-extensive with the word cargo in the enlarged sense of that word.
*452 But if the freight were to arise from the transportation of Kve stock, or of goods on deck, inasmuch as they would be exposed to greater hazard than goods properly stowed under deck would be, the fact should be particularly set forth in the policy, otherwise the insurance on freight generally would not extend to such property. It would not be more protected than would the property itself be, if insured as cargo.[1]
These views of the case reduce the plaintiffs’ interest in the cargo covered by the policy to ten doubloons, and the freight of them from St. Jago to Charleston.
But the plaintiffs contend, that as they had some cargo and some freight and as those subjects are valued in the policy, they should recover according to the valuation. We have not been able to arrive at that conclusion.
If, by mistake or design, the assured should put on board only part of the goods to which he intended the valuation should apply, we think it clear that he could not recover as if the whole subject matter of the valuation had been put on board ; but that in case of loss, he should recover such proportion of the valuation as the goods which were on board and at risk, should bear to the whole valuation.[2]
We have been referred to Coolidge et al. v. Gloucester Mar. Ins. Co. 15 Mass. R. 344, where the policy was upon freight at and from Amsterdam to Philadelphia, and the valuation was three times as much as the freight was worth, and yet the plaintiffs recovered according to the valuation. Now it is not because the property is estimated too high, (unless the valuation is grossly enormous,) where the parties conduct themselves fairly and not with a view to a wager, that the assured should be prevented from recovering according to the valuation, but because the property to which the valuation applied, was not at risk. In the case cited it was wholly uncertain to what sum the freight to be obtained ¿t Amsterdam would amount. All was fair. There was no evidence that the assured did not take all the goods they could get *453 upon freight, or that they left any. If they had obtained no freight, there would have been nothing at risk and the policy would not have attached. They did in fact think it worth their while to proceed with what they procured, and it did not appea; that the valuation was founded upon a full loading of the ship. In that case the Court thought the plaintiffs entitled to recover according to the valuation. The whole subject matter of the valuation was at risk and it was all lost.
But there has been a misunderstanding between the parties in the case at bar, as to the property which should be included in the valuation and covered by the policy ; and a contract cannot be enforced unless the minds of both parties have assented to its provisions. The plaintiffs supposed, as their counsel have argued, that their interest in the mules, &c., and in the freight of them, would be within the protection of the policy, under the terms cargo and freight. The underwriters were of a different opinion, and never did assent to that proposition. But the plaintiffs have been mistaken. So far as it regards the underwriters and this policy, the mules &c. might just as well have been left at St. Jago, as have been on board. If that had been done and the vessel had sailed in ballast trim, taking only the doubloons on board, and for some cause or other, leaving the property which the assured intended should have constituted the bulk of the cargo, it would seem impossible to maintain that they should recover as if it had been all lost, when it was safe in the store on shore and had never been at risk. Again, what becomes of the right to salvage, which belongs to the under writer where only a technical total loss has happened ? It could not be permitted that the assured should recover according to the valuation, when the underwriter could receive only a twelfth part of the salvage to which he would have been entitled, if the whole property to which the valuation was intended to apply had been at risk.
It has been contended for the plaintiffs, that as this was an insurance for a certain time, the assured could not be supposed to know how much property would be on board during the time ; that it might vary ; sometimes they might have much more, sometimes much less than the valuation; and that *454 what they should happen to have, more or less, at the tune of the loss, should be considered as the subject matter of the valuation. But we are of opinion that this view of the case makes no difference ; and that on every voyage which should be made within the term, the same evidence of property or interest at risk, should be required, as if the policy were upen that single voyage.
It is indeed said in some books (3 Taunt. 506), u that it is unnecessary to prove the amount of interest under a valued policy. We must take it that the value insured is the value of the assured’s interest.” This rule, according to Lord Mansfield, would require some qualification. He illustrates his opinion by supposing a valuation of £2000, and that the assured had only the value of a cable on board, and considers that in such a case the amount of the valuation should not be recovered. If the parties do not agree to pay in case of loss, whether there were interest or no interest at risk, it would be a violation of the contract on the part of the assured, to put on board only what in comparison with the valuation might be considered as nominal. ' In the language of Yeates J., in Miner v. Tagert, 3 Binney, 205, “ the amount will not he inquired into unless the valuation is grossly enormous.” Such we think would be the case at bar, if it should be admitted or proved, that the assured founded their valuation upon the inconsiderable amount of the ten doubloons. But the plaintiffs never did intend to apply their whole valuation to the ten doubloons only, but to the doubloons and the mules, &c., which were on board, but not covered by the policy as cargo They had not the whole subject matter of the valuation at risk under the policy, and cannot be permitted to recover as if they had, but only for the part of it, consisting of the. doubloons and the freight of them, as is before stated.[1]

 See Paddock v. Franklin Ins. Co., 11 Pick. 230.

 See Allegre v. Maryland Ins Co. 2 Grill & Johns. 136; 2 Phillips on Ins 59.

 See Flint v. Hemyng, 1 Barn. & Adol. 45; 1 Lloyd & Welshy, 257.

 See to same point, Allegre v. Maryland Ins. Co. 2 Gill & Johns. 136.
But a perilous cargo to the insurer does not necessarily increase the perils to the ship-owner. Chesapeake Ins. Co. v. Allegre, 2 Gill & Johns 164.

 See Watson v. Ins. Co. of America, 3 Wash. C. C. R. 1

 See 2 Phillips on Ins. 206 to 217, and the cases there cited; 3 Kent’s Comm. (3d ed.) 273 to 276; Brook v. Louisiana Ins. Co. 4 Martin (New Series,) 640, 681; Alsop v. Commercial Ins. Co. 1 Sumner, 451; Rickman v. Carstairs, 2 Nev. & Man. 562; S. C. 5 Barn. & Adol. 651.